COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellant,

v.

William M. REYNOLDS, Sr., and Ann Louise Reynolds, wife, Appellees.

Court of Appeals of Kentucky.

Oct. 12, 1973.

Carl T. Miller, Jr., Dept. of Highways, Frankfort, Edward E. Lanham, Owens-boro, Perry M. Lewis, Madisonville, for appellant.

Clarence Bartlett, Bartlett, McCarroll & Nunley, Owensboro, for appellees.

CULLEN, Commissioner.

Having determined the necessity to widen U. S. Highway 231 through the city of Beaver Dam, the Department of Highways instituted proceedings to condemn a strip of land 5½ feet in width along the front of the property of William Reynolds and wife, which abutted the highway on the west side. The Reynolds property was occupied by a commercial garage building and related structures. Surveys had satisfied the department that the west boundary line of the existing right-of-way was so located that the Reynoldses owned a strip only 9½ feet wide between the front of their building and the right-of-way. The department sought to condemn the eastern 5½ feet of that strip, describing it by reference to the center line of the proposed new right-of-way and to surveyor's stations. (The department sought also to condemn a temporary easement for construction purposes over the remaining four feet of the strip, but there is no particular issue about that). On trial of the case in the circuit court, however (on appeal from the county court), the landowners maintained that the department's location of the western boundary line of the existing right-of-way was erroneous; that the true location of the line was at a point 22 feet east of the Reynolds building, so that the Reynoldses owned a 22-foot strip in front of their building instead of one merely 9½ feet wide as contended by the department; and that therefore the department was in reality taking an 18-foot strip of the Reynolds land rather than a 5½-foot strip.

The appraisal witnesses for the department, basing their estimates of damage on the taking of only a 5½-foot strip, estimated the difference in "before" and "after" values at $2,500 to $2,750. The estimates by the landowners' witnesses, however, were made on the basis of the taking of an

18-foot strip, the witnesses being of the belief either that the Reynoldses had title to that strip or were entitled to be paid for it because they had used it for a great many years. Their estimates of the difference in "before" and "after" values ranged from $35,000 to $75,000.

The instructions referred merely to the taking of "the land mentioned in the evidence," without any mention of the dispute as to how much land was being taken. The jury awarded damages of $15,000.

The judgment entered upon the verdict directed that a special commissioner convey to the department "the property condemned in this action *as described in the Petition herein*" (our emphasis). The result was that the verdict, which obviously was based on the testimony of the landowners' witnesses, determined damages on the theory that the department was taking 18 feet, whereas the judgment gave the department only 5½ feet.

As might be expected, the department has appealed from the judgment, complaining primarily that it was error even to permit an issue to be raised as to the amount of land being taken, and in any event the evidence for the landowners was not sufficient to sustain the verdict. The department made appropriate objections and motions throughout the trial.

■ The department located the western boundary of the existing right-of-way by surveys based on deeds. The surveys and a deed were introduced in evidence. This was good evidence of the location. The landowners, on the other hand, did not introduce any evidence as to record title. Mr. Reynolds testified that he took a tape measure and stepped off 25 feet from the center line of the existing *pavement*, and there remained a distance of 22 feet to his building. That testimony of course proved nothing as to ownership of anything, or as to location either of the right-of-way line or of the Reynolds property line.

■ The Reynoldses seem to have based their claim on some vague theory of ad-verse possession. They introduced testimony that for 40 years or more they and their predecessors had used the area in front of their building, up to the edge of the old *pavement*, for customer parking and as a site for gasoline pumps. This evidence fell far short of showing *adverse* possession under a claim of ownership, particularly in the light of the requirement of KRS 413.050 (2) that *written notice* of adverse claim to a public road must be given to the county court before limitations will begin to run.

■ The theory advanced by one of the witnesses for the landowners, that the Reynoldses should be paid for the area in question simply because they had been *permitted* by the state to use it for many years, is of course utterly fallacious.

■ There simply was no evidence at all warranting a finding that the right-of-way boundary was where the Reynoldses claimed it to be, or that their ownership extended more than 9½ feet from the front of their building. Accordingly, it was error to permit the landowners' witnesses to base their estimates of values on such ownership, wherefore the verdict based on those estimates cannot stand.

■ The department maintains that the landowners were not entitled even to raise in the circuit court the claim that more land was being taken than described in the petition, since they did not raise that issue in the county court. From a strictly legalistic viewpoint, it would seem that the department in any situation would be entitled to make a choice as to the quantity and boundaries of the land it wished to condemn, and the issues in the condemnation suit would be confined to the land described in the petition. If the department subsequently took actual possession of more than was condemned, that would be a matter to be litigated in a separate reverse-condemnation suit. So in the instant case, if the department condemned only a 5½-foot strip lying four feet from the garage building, and subsequently tried to oc-

cupy a strip 18 feet wide, the landowner could in a later suit litigate the ownership of the extra 12½ feet. But it appears to us that the ends of justice would better be served for the issue of ownership to be tried out in the initial condemnation suit, when it is apparent that the selection of the land to be condemned is predicated on a belief by the condemnor that it presently owns adjoining land. Therefore, we think it was appropriate to raise the issue in the instant case.

We reserve the question raised by the appellant concerning the qualifications of the witness Crowe.

The judgment is reversed with directions for further proceedings in conformity with this opinion.

All concur.